I'd like to reserve three minutes for rebuttal, please. Good morning, Your Honors. May it please the Court. My name is David Tellickson, and with me I have Jeffrey Ware and Jessica Kempf, and we represent National Products, Inc., who is the appellant in cross-appellate. Had the jury below been properly instructed on the law, given their finding of willful trademark infringement, a reasonable jury would have returned a verdict of a WCPA violation. However, unfortunately, they were not properly instructed, and they came back with a verdict of no WCPA violation. But here we had a finding of trademark infringement, which is a violation of a protectable mark, and that's not contested on appeal, that impacts the public interest absent unusual or unforeseen circumstances. That is the test in the Seattle Endeavors case, which relies on the Nordstrom case, both from the Washington Supreme Court. And in Seattle Endeavors, that's the only example of an exception to this general rule that There's a public policy in not having confusion based on infringing trademarks. And in Seattle Endeavors, there's a very narrow exception where if there is, it said, unusual or unforeseen circumstances, and in that case, it was the inadvertent infringement of a weak mark. That's the only exception that's recognized in Washington to the general rule. And here we have neither, and you need, our kind would need to prove both an inadvertent infringement and a weak mark. So how is inadvertent defined? Is inadvertent the opposite of intentional, or is it the opposite of intentional or willful blindness under Washington law? I don't think we have a precise definition of inadvertent. I think you can, you can see in the willful blindness context, like in the Global Tech case, it talks about willfulness being, willful blindness being different from negligence or recklessness. So I would... Here he did find that it was deliberate, right? Yes, in this case... And isn't that inconsistent with inadvertent? Yes, Your Honor. We think that certainly willful trademark infringement, which is exactly what the jury found, cannot be inadvertent. But willful, included in the definition of willful, is willful blindness, correct? That is correct. So the question really is, is what's inadvertent, comes back to my question, does inadvertent mean, does it exclude the willful blindness? Does it exclude only intentional? I think in the Supreme Court's Global Tech case, 563 U.S. 754 at 769 to 770, they said, we think these requirements will give willful blindness an appropriately limited scope that surpasses recklessness and negligence. So, and then it goes on to talk about a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing. The Seventh Circuit in the Hard Rock case, 955 Fed Second and 1149, and I don't think we have any guidance from the Ninth Circuit, but in the Seventh Circuit, in the Hard Rock case, they said, willful blindness is equivalent to actual knowledge for purposes of the Lanham Act. And I think that makes sense, Your Honor. That the key in that one is for purposes of the Lanham Act. Well, and that's what we're, we're dealing with a trademark infringement case here. And is willful blindness in the trademark context where you are shielding yourself from knowledge? No, I understand that. And I'm totally on board with the Lanham Act part of the case. My issue is, I mean, I've got a very careful opinion written by Judge Donahue that says, you know, Washington law requires more. So I won't lightly disagree with the magistrate judge, although I can, but I mean, he was very careful in saying, you know, it's not the same thing. Well, he also assumed that the jury found on the basis of willful blindness. And I don't think you can make that assumption. The jury came back with... They had to find on the basis of something. Well, right. But they could have found, and I think the evidence is, is, is plenty that they could have found on the basis of willfulness itself. But regardless of whether they found on willfulness or willful blindness, I think willful blindness is not inadvertent. I think you, there are deliberate actions being taken and deliberateness is the opposite of inadvertent. I think the record in the Seattle Endeavors cases is quite scant, at least in the Supreme Court decision as to what the evidence or lack of evidence was to inadvertence. They just say, and the infringement was inadvertent. But even if you leave inadvertence aside, Your Honor, there's no evidence in the record that this was a weak mark. And Seattle Endeavors requires both inadvertence and a weak mark. And in this case, we have a likelihood of confusion of a trademark that was found valid by the jury. So we have a valid trademark and that's not appealed. So we have a, a valid mark and this is a, this is a shape trademark. So in 1991, when this product was introduced, it has no trademark rights, but through many years of exclusive use and lots of advertising, it gets a secondary meaning. It becomes a trademark and the jury found it was a valid trademark and that's not even contested, Your Honor. You seem to suggest you did at the outset that part of this problem arose because there wasn't a proper instruction. But the instruction, as I understand it, that you proposed didn't provide any carve out, if you will, for this issue that we've been discussing. So there was no proposed instruction for Judge Donohue to consider. And what do we make of that? I mean, isn't it, wasn't it an incumbent on you to concern? Well, what we said to Judge Donohue was not only the four prongs are met here, as Nordstrom would tell you, but in this record, there is no evidence of a weak mark or an inadvertent infringement. So you should just tell the jury that all five are met. And he could have disagreed as he did and said, no, we're going to let the jury weigh weak mark and inadvertent infringement. And, but he, we made our objection clear on the record that he needed to tell them more. He couldn't just give them the basic instruction on WCPA and let them try to sort it out when we have all this guidance from Nordstrom and Seattle Endeavors, and they weren't given any of that guidance. WCPA by itself is a very difficult thing for a jury to, to wade through in the context of trademark infringement. They've got to piece together a lot and, and they weren't given that opportunity. But is it your position now that the instruction you proposed, do you continue to say that wasn't the appropriate instruction that should have been given? I think based on the record, it was the appropriate instruction, but it put Judge Donohue on notice that he needed to tell them more. And in our discussions on the record, we, it was clear that we, we were asking for more guidance and our suggested guidance was, was perhaps something more than he would give, but he gave us four prongs. And if he wanted to leave the fifth prong for the jury, that was fine. But we made our record that there was not enough guidance on the WCPA instruction. So, um, I think if you, if you look at the Seattle Endeavors case and what a weak mark means in that case, it means commercially weak. In that case, there were many, many apartment complexes in the Seattle area that used the Willows mark. And when they use the term weak mark in that case, they mean commercially weak because Willows is an arbitrary trademark that started out as a strong mark, but through many other uses of Willows for apartment complexes, it was commercially extremely weak. And that's what the court said. But if you look at the record here, it's undisputed that this hourglass shape had been exclusively used for 25 years. Um, there's, there's no evidence to the contrary. Uh, Mr. Broussard, Archon's president admitted that, um, there, there's been two infringers. There was a big competitor back in the mid 2000s, 2005, 2006, 2007 timeframe who, who, uh, thought they had found a way to design around the patent. And they also took the hourglass shape and copied that. And, uh, they, they agreed to leave the market. They agreed that the trademark was valid and Judge Peckman entered an injunction. But other than that competitor and Archon, it's been 25 years of exclusive use. And so you cannot have a commercially weak mark based on this record. And what Archon argues and what Judge Donahue said in his opinion was that, well, there was a patent protecting it and that's why you had an exclusive use of this mark for all these years. But there's not a single case that, that says that, Your Honors. It's, it is, um, the reason for the exclusive use is not important. What we have here is 25 years of exclusive use of a trademark and lots of advertising, lots of things to get the word out that this is a trademark and the jury found that and it's not contested on appeal. So, um, this is not a weak mark. And on that basis alone, uh, you need to overturn the, uh, the WCPA, um, violation. Um, I think I'll reserve the rest of my time for rebuttal because I want to get into the substantial evidence that supports the, uh, the finding of willfulness itself, but I think I'll wait to hear from my colleagues. Thank you. Good morning. May it please the court. My name is Mark Karish. I represent the appellee and cross-appellant, Archon Resources, Inc. Um, Archon did not willfully infringe NPI's trade dress and should not be required to pay attorney's fees, which is really what plaintiff is trying to get with this appeal. That's what happens if you, if you lose on the WCPA. That's correct. That's what Nordstrom held. Um, this case is about a very rare product shape trade dress. There are very few of them. This is a very different scenario than a product shape trade dress, like the Coke bottle. It's very different than a word mark, like a gallo for, for wine, for example. And the unique nature of the rights and the issues here make it very different than the typical willfulness case or willful blindness case. But at least for the period, at the very least, the period after you're sued, you continue to market your almost identically shaped product, as I understand it. Isn't that, how can that not be willful? Well, a couple things that I'll get into. Archon, the entire time, marked its products very clearly with its own Archon trademark, not only on the handle of the product, but on the packaging. There's case law that says that doesn't get you out from under. But there's also substantial case law that says that it does. And I would certainly draw the court to the Versa Products case in the Third Circuit, which says that the defendant's intent for purposes of assessing likelihood of infringement. What other possible reason could Archon have had for copying the shape than wanting to piggyback on the goodwill and trademark of the other company? Because it's, it's part of this case that the hourglass shape is not functional. So in the Walmart case, the Supreme Court pointed out that consumers are aware of the reality that most of the time product shapes don't... I asked you a different question. What possible reason did Archon have for using that shape when it was not functionally required or relevant, and there was a major market for the product of your adversary? Again, Archon was copying a shape shown in an expired patent, Your Honor, and was completely unaware of the trade dress. So that, that is the reason. They actually tried to stay close to that shape to avoid infringing on anybody else's patents. So before coming out with this product, they specifically searched to make sure that there was no other patent protection that would impact this, and intentionally hewed close to the shape that was shown in the expired patent. So again, the Third Circuit held specifically that in product configuration cases, you don't consider the defendant's intent unless it is demonstrated by clear and convincing evidence, and only where the product's labeling and marketing are also affirmatively misleading. And that Versa case has been cited with approval in the Ninth Circuit in the Leatherman case, which held that the defendant's different labeling and packaging in that case prevented confusion. It was also cited with approval in a couple of Central District of California cases, Grupo Bimbo and Bobrick Washroom, and there's never been any argument in this case that Archon's packaging, labeling, or marketing was misleading. Your Honor, you did hear evidence about this conversation at the trade show? I would like to get to that, Your Honor. The, there was a... Just so we can set the record straight, the CEO of NPI encountered your client at a trade show, and your client asked about the hourglass shape, and your, this individual, don't know who he was, but said, well, your patent's expired. And the response was, but we have other protections. So, you're correct, Your Honor, except that I don't think the hourglass shape was specifically discussed, just the product as a whole. And if you turn it sideways, you'll notice it's not hourglass shaped. Our client never considered this product to be hourglass shaped. The conversation said, is that your product? Yes. Well, that's our product. Well, not anymore. Your patent expired. And then the response was, well, there are other protections other than just that patent that you may want to look into that it may still infringe. So, there was never any mention of federal trademark protection. There was never any mention that the shape of the product was the problem. And so, there was really nothing for Archon to take away from that, that this is a federal trademark infringement case. But doesn't that slice of evidence support the jury's determination of deliberate? I don't believe so, Your Honor. There was really almost no way, sort of, short of doing a formal patent search. A reasonable juror inside the jury room could have, couldn't have said, did you hear about that conversation they had at the trade show? These people knew what they were doing, or at least should have inquired. So, again, Archon did look at the patent and trademark page of the plaintiff. And on that page, there was no drawing of the shape. What there was, was a listing of 80 different word marks. And deep in the middle of that list was the phrase hourglass shape. To follow up on Judge Hawkins' question, those are all good arguments to make to the jury, and I suspect you made them. And the jury didn't come out in your favor. But your position is that no reasonable jury could have found as this jury found. And just as Judge Hawkins suggests, there is certainly evidence in there. You just aren't, you don't think it's as good as the evidence you have, but that's the point of the jury decision. So, I respectfully disagree, Your Honor. I don't think the evidence is sufficient to show that in this context of product-shaped trade dress, that the information available to Archon and provided to Archon at the trade show was sufficient to put them on notice of the trademark at issue here. And I think there's ample evidence to show that this evidence was not, that evidence about the trademark was not readily available to the public. It wasn't clear on the patents and trademark page. It was, it wasn't in any catalog or advertising prior to 2007. After, it wasn't on the website at all until 2010. After 2010, the testimony was that there were 25 pages out of the thousands of pages on the website that had any information about the trade dress. And there's no evidence in the from its website when it filed its patent application, I mean, its trademark application, it included one of the 98 percent that did not have any information. Isn't there evidence, though, that the nature of this industry, that the players are all very aware of what each other is doing, and there's evidence that indicates, you know, some on your side, some acknowledgement from your own people, well, we have to be very careful because, you know, they've got tricks up their sleeve and that kind of thing. I mean, this is an industry where they're paying a lot of attention to each other. So couldn't the jury at that point infer from just the relationship of these parties and how they're operating that they would have been paying attention to what the IP rights are? Well, they were paying attention to the patent rights. This is a very unusual trade dress registration. There are very, very few of these. And it was not on ARCON's radar. And I think what's really instructive is this Sixth Circuit Groneveld case. In that case, the court held that by making the appearance of the pump, except for the label, nearly essentially the same as the plaintiff's pump, the defendant did specifically target consumers who were familiar with the plaintiff's pump and offered them a competitive option. The court then held, though, that the use of a different logo on the pump itself and on the marketing materials and the literature avoided any confusion. But the court, and that's exactly what ARCON did, it used a separate name very clearly on the handle and on all of its literature and on its website and on its packaging. But I think importantly, that same court noted that the plaintiff's complaint about slavish copying of the shape to the jury had a certain emotional appeal and presumably swayed that jury because no one likes a copycat. And that court actually suggested that the issue not go to the jury of that intent issue for that reason. And I think that's what happened here. I think the jury was swayed by the idea that ARCON intended to make a directly competing pump that looked very similar to their pump, but that was very clearly labeled with their own brand. And it seems to me that there was enough evidence from which the jury could make that conclusion. Yeah. I think, though, that they could have been swayed by the I don't think the Supreme Court's made it very clear that copying of expired patents is legitimate and that absent any other kind of protection, copying is legitimate. And I think... And I assume you made that argument to the jury. We did, Your Honor. But again, the potential prejudice of the copycat thing, I think, was an issue here. And I want to address a point that was brought up earlier about the after-filing continued sales of the product, okay? So first of all, the plaintiff waited 20 months to sue. Secondly, they never moved for a preliminary injunction. They never moved for a summary judgment. There's... The defenses in this case were not frivolous. They went all the way to the jury, even after a Rule 50 motion. ARCON, as the district court found, was in good faith after the filing of the complaint. They were trying to settle it. They tried to avoid any issue. And this isn't a wordmark case. They couldn't just change the wording on the packaging. They couldn't just change the website. Like, they had to redesign the entire product and test it and then manufacture more. So that time frame was actually very short from the time the complaint was answered to when the sales ceased, Your Honor. And I don't think that... I've never seen a case that would find willful infringement on that basis. And finally, the complaint itself alleged willful infringement. And so that willfulness and that complaint had to be based on pre-filing willfulness. And I just don't think there's sufficient fact in the record to show that. I think the problem here is that, again, it's not on the packet. It's... Let me just back up slightly and just talk about the fact that this is not a very well-marketed trademark. Because I think it goes into the weakness point of the WCPA as well. Basically, again, Archon couldn't learn of it from the patent and trademark page. There was only one in 40 of their web pages had any information about it. The packaging, the product, and the labels all failed to call attention to the trade dress. NPI primarily focuses on these pocket brochures that it But there was ample testimony at trial, not only that Archon never saw those, but that every third-party witness, including NPI's own witnesses, had no idea that the trade dress was shown in that little brochure. And so that was it. If Archon didn't happen to see it in the little brochure that comes in the product packaging, and they didn't happen to click on the one out of every 40 pages that had any information about the trademark, they would have no way of knowing about this. Under those circumstances, I just think it's unbelievably burdensome to consider them a willful trademark infringer, especially when the warning at the trade show, the alleged warning, which was May, May, I don't think that's sufficient to put them on notice of a trademark when they'd clearly been discussing a patent. And at trial, Mr. Carnevale massaged his testimony to try to make it sound a little more damning. But I mean, that just shows how weak the original discussion was. So I just want to make a couple more points. I think there's a real policy question here with this willful infringement case. Intellectual property is an abstract, man-made thing. It's not like a piece of real property with a clear boundary. Under these facts, a competitor like Archon, who's trying to copy an expired patent, should not be intellectual property. Intellectual property should not be turned into an elaborate game of gotcha. And if you read how the NPI dealt with their intellectual property in the supplemental excerpt of record, pages five to seven, you'll see that's what this was. The court can easily find on these facts that this is not willful infringement. Also, I think because, as I'm arguing the infringement was inadvertent, and because of the lack of evidence, this is a very weak mark. I think the court, there's ample evidence to support the court's conclusions of both of those things. I think the court should keep in mind that NPI never presented any objective evidence of strength of the mark like a consumer survey. In fact, NPI tried to proffer the testimony of an expert on consumer recognition, and that expert was excluded by the court because there was no evidence to support his opinion, no supposed need for a new advertising campaign. All of those things just show that this is a weak mark. While NPI did offer some self-serving testimony that members of the public recognized RAM mounts, other evidence suggested that the shape did not have marketplace recognition, and there was at least one witness that comes to my mind. This witness, Joseph Todrak, who got up there. He was in the mounting industry since 2005. He had been a longtime customer of NPI, and he testified that he had no idea that NPI had a trademark in that hourglass shape. Again, NPI relies on this prior case against Gambert Johnson, and the fact that Gambert Johnson settled to somehow show that the mark has recognition, that was a primarily a patent case. The patent that now expired was still in force back then. As part of a settlement, yeah, the other side agreed that everything was valid, but there was no determination by a fact finder. There's never been any objective evidence of strength. Let me close quickly, if I beg your pardon, with two points. So one, even if willful infringement is found, willful infringement does not mandate a the court's attention to the SafeWorks LLC case, which was cited by NPI. Even though the court found willful trademark infringement of a word mark in that case, the court disgorged the defendant's profit. You are, and you're summing up, so sum up. Yes, just that case, even though there was willful infringement, and they disgorged the profits, the court held that there was no violation of the WCPA. Again, the courts have been reluctant to uphold. There's no de facto rule that the violation of the Lanham Act is a violation of the WCPA. We take the point. Thank you, Your Honors. Thank you. Thank you, Your Honors. The standard here on the willfulness issue is, was there substantial evidence supporting the jury's finding of willfulness? And as we've discussed, the jury could have made their finding and did make their finding. I think the question as to post-complaint going forward, which is the damage period that Judge Lasnik limited us to, there's no doubt it's willful from that day forward. I think the interaction at the CES show in Las Vegas in 2014, I think a jury could base their decision solely on that interaction. And I think there, Mr. Carnevale, who was the president of NPI, said, we have other forms of protection, and we have patents, and there's trademarks and copyrights. So that doesn't... No, he didn't say trademarks or copyrights. No, no, he just said other protection. Other than just that patent, it looks like it still may infringe. You may want to look into that. And Mr. Broussard, who was the president and CEO of Archon, admitted that he was told about that interaction. He was not there in person, but he didn't dispute that that interaction went on, and he acknowledged that it went on and that he was told about it. I think another thing that the evidence in the record establishes is that Archon willfully calculated to exploit the advantages of NPI's established mark. There was evidence that they considered the product, the shape product that they came out with, to be compatible, similar, and nearly identical in appearance and they, there were documents that talked about NPI's goodwill. They called it established value in the market, and they said because of NPI's established value in the market in this product, they could charge a higher price. And they did, in fact, charge a higher price above their normal margins because they recognized that there was, there was value that NPI had created. So I think that is evidence that the jury could have relied on. There was also lots and lots and lots of evidence that the jury could have relied on as to how, besides the trade show, Archon got knowledge. These, these pocket brochures with the trademark and talking about how it's distinctive and recognizable are right on the front of, of these pocket brochures, which are included in a It's their primary vehicle for getting information out to their customers. And there were over 10 million of these things that were sent out before trial. And Archon admitted going to the trade show booths of NPI. They admitted picking up brochures. They admitted ordering product from NPI. Mr. Broussard himself said he did it two or three times in the year that they, they copied this product. And there was testimony that these things were in every plastic bag that was shipped. So Mr. Broussard couldn't say that he didn't receive, you know, this notice. So the jury, uh, could have and did rely on this information and this evidence. And there was overwhelming evidence that there was a willful infringement. Okay. Thank you, Your Honors. I think both sides for their arguments, National Products, Inc. versus Archon Resources, Inc.
judges: Hawkins, W. Fletcher, Seeborg